UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
ANDREW DICARLO,

                    Plaintiff,

      - against -

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.
-----------------------------------------------------------X

**MEMORANDUM DECISION AND ORDER**

22-cv-2117 (BMC)

**COGAN**, District Judge.

      1.      Plaintiff seeks review of a decision of the Commissioner of Social Security, following a hearing before an Administrative Law Judge, that he is not disabled as defined in the Social Security Act and its regulations for the purpose of receiving disability insurance benefits under Title II of the Act.  Despite finding severe impairments of cervical and lumbar spine degenerative disease with radiculopathy, the ALJ also found that plaintiff had sufficient residual functional capacity to perform light work (20 C.F.R. § 404.1567(b)), subject to dynamic and height restrictions.

      2.      The problem with plaintiff's case is that he had a relatively late onset date – April 2020 – as compared to the progression (or, more properly, remission) of his condition.  The reason for the late start date was that despite his injury, plaintiff concedes that he was able to continue to do his heavy work as a truckdriver/water deliveryman (i.e., he was lifting heavy bottles and packs of water) until April 2020.

      3.      The record is clear that although plaintiff's impairment might have been more severe at an earlier point in time, the medical evaluations in the Fall of 2019 and during the period after his onset date show that he made a substantial recovery.  Plaintiff had his most

negative evaluation in September 2019 – moderately severe lumbar radiculopathy due to a bulging disc, foraminal stenosis, and straightening of normal lordosis.  At that time, his neurosurgeon suggested that surgery might be necessary, and plaintiff was willing to consider that.  But by December 2019, after a course of pain injections and physical therapy, new MRI results and plaintiff's self-reporting led his neurosurgeon to defer consideration of surgery and to recommend continuation of physical therapy and injections, as they appeared to be working.  His neurosurgeon concisely summed up the history and status of plaintiff's case in January 2020:

> Mr. Dicarlo is a 42-year-old gentleman that presents today for Follow-up regarding his left L5-S1 disc herniation. [W]e discussed surgical intervention in the form of a left L5-S1 microdiscectomy. Updated MRI imaging did indeed reveal improvement with regards to the disc herniation at L5-S1 and his symptoms as well have improved. We have decided to hold off on the procedure and he will continue to monitor his symptoms. If at anytime his radiculopathy returns we can move forward with surgical intervention however if his symptoms do not return we can continue to treat this conservatively with physical therapy and injection treatments. He will remain out of work for the time being however he will start to become more active in his daily routine to see what residual symptoms he does indeed have. He will call me barring any issues.

4.      Not much happened after that.  Plaintiff had a video appointment with Dr. Raval about seven months later (July 2020) during which plaintiff said his symptoms had significantly improved except for a few incidents of pain in his left calf that went away with ibuprofen and a muscle relaxer.  Plaintiff returned in October and said he had hurt his back while playing with his children, but noted that physical therapy was helping.  Dr. Raval found a full range of motion and no pain in the mid and lower spine.  Straight-leg-raise tests were negative, and Dr. Raval recommended more physical therapy.

5.      In February 2021, plaintiff informed Dr. Raval that he no longer had any upper back pain and that his lower back pain waxed and waned.  Dr. Raval found full, painless range of motion in all three regions of the spine, full strength in his legs, and negative straight-leg-raise

tests.  Two more appointments with Dr. Raval, in May and September 2021, yielded the same results.

6. A non-examining state agency medical consultant reviewed the records as of September 2020 and concluded that plaintiff had sufficient RFC for light work.  Another non-examining state agency medical consultant reviewed plaintiff's claim in January 2021 and similarly concluded that he had sufficient RFC for light work, except he needed a light lifting limitation and could not be exposed to unprotected heights.

7. In the instant review proceeding, plaintiff argues that the ALJ could not reach a conclusion that plaintiff had sufficient RFC for light work with restrictions without hearing testimony from a medical expert to that effect.  But such testimony was unnecessary here.  The record shows that despite having what the ALJ characterized under the regulations as a "severe" back disorder, plaintiff simply had a back injury that improved over time.  Although he could not return to his prior "heavy" work, he could perform light work with restrictions.

8. I agree with plaintiff that the opinions of non-examining doctors are often, maybe even usually, not particularly probative evidence of a claimant's RFC.  But here, looking at the reports from plaintiff's treating physician together with those non-examining doctors' opinions, the totality of the evidence is more than sufficient to support the ALJ's finding.  Contrary to plaintiff's assertion that he is "not suggest[ing] that a physician's functional evaluation is a *sine qua non* for an ALJ's RFC determination," I think that is precisely what he is suggesting. And it is not the law.

9. Plaintiff argues that in ascertaining his RFC, the ALJ overstated the importance of plaintiff's daily activities, as driving for an hour while performing household chores does not

3

equate to sustained performance in the workplace.  But even ignoring those daily activities, the clear medical record provides ample support for the RFC determination.

10. Accordingly, plaintiff's [8] motion for judgment on the pleadings is denied, and the Commissioner's [10] motion for judgment on the pleadings is granted.  The Clerk is directed to enter judgment dismissing this case.

**SO ORDERED.**

*Brian M. Cogan*
_____
U.S.D.J.

Dated: Brooklyn, New York
       October 10, 2023

4